**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARK MORREL; RUTH MORREL,
Plaintiffs-Appellees,

v.

No. 98-1963

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-98-116)

Argued: April 8, 1999

Decided: August 16, 1999

Before WILKINS, WILLIAMS, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Wilkins and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Lowry Jock Miller, MILLER, MILLER, KEARNEY &
GESCHICKTER, L.L.P., Fairfax, Virginia, for Appellant. Bruce
Andrew Cohen, KATZ & STONE, L.L.P., Vienna, Virginia, for
Appellees. **ON BRIEF:** Gerald I. Katz, KATZ & STONE, L.L.P.,
Vienna, Virginia, for Appellees.

_____

**OPINION**

KING, Circuit Judge:

Mark and Ruth Morrel obtained a money judgment against The Miller Group Construction Company, Inc. (the "Contractor") in the United States District Court for the District of Columbia. When they were unable to execute the judgment, the Morrels filed this suit in the Eastern District of Virginia, seeking to enforce the judgment directly against the Contractor's liability insurer, Nationwide Mutual Fire Insurance Company ("Nationwide"). The district court granted summary judgment in favor of the Morrels.

Nationwide now appeals, arguing that (1) the District of Columbia judgment was obtained by fraud and upon defective service, and (2) the Morrels may not recover under the insurance policy because the Contractor breached its obligations thereunder. We reject Nationwide's position on both issues and affirm.

I.

On April 10, 1995, the Morrels hired the Contractor to renovate their home in Bethesda, Maryland. The parties entered into a written construction contract. While performing the renovations, the Contractor seriously damaged the Morrels' house.

On August 12, 1995, the Morrels submitted a claim for this damage to Nationwide. Thereafter, Nationwide opened a file for the Morrels' claim and had the property inspected several times. During the course of the next year, Nationwide continued to investigate the Morrels' claim.

As of July 1996, the Morrels still had not been compensated for the damage to their property. Consequently, on July 22, 1996--and as authorized by Article 10.8 of the construction contract--the Morrels commenced an arbitration proceeding against the Contractor in accordance with the rules of the American Arbitration Association. In their filings with the arbitrator, the Morrels named as defendants "The Miller Group Construction Company, Inc." and its president, Paul D.

2

Miller. In letters dated September 22 and October 8, 1996, the Morrels notified Nationwide of this arbitration proceeding. An arbitration hearing took place on October 15, 1996. Despite receiving notice, neither Nationwide, nor Mr. Miller, nor the Contractor participated in the arbitration. On November 11, 1996, the arbitrator awarded the Morrels a total of $36,774.25 in damages. However, the award was made against Mr. Miller personally, and not against the Contractor.[1] The award was affirmed by the American Arbitration Association on December 20, 1996.

The Morrels were dissatisfied with the arbitration award. On February 7, 1997, they filed an Application to Correct or Vacate Arbitration Award (the "Application") in the United States District Court for the District of Columbia.[2] The Application named as defendants Paul D. Miller and "The Miller Group Construction Company." The Morrels had the Application personally served on Mr. Miller, who also accepted service on behalf of "The Miller Group Construction Company," as its president. On May 6, 1997, the Morrels sent Nationwide a copy of the Application and all accompanying pleadings by certified mail. Nationwide apparently received these documents the next day.[3]

_____

[1] During the course of the arbitration proceeding it was discovered that the Commonwealth of Virginia had terminated the corporate status of The Miller Group Construction Company, Inc., on September 9, 1994. Paragraph 1 of the arbitration award states:

> 1. The Respondent, Paul D. Miller, is liable to Claimants in place of the Respondent, the Miller Group Construction Co., Inc. because the Commonwealth of Virginia terminated the corporate existence of the Miller Group Construction Co., Inc. prior to the formation of the Miller contract and, accordingly, Paul D. Miller is individually liable for the obligations created by the contract.

J.A. 99.

[2] Because the arbitration proceedings had taken place in Washington, D.C., the district court for the District of Columbia had jurisdiction over the Application. See 9 U.S.C.A. § 10 (West Supp. 1997) (arbitration awards may be vacated by "the United States court in and for the district wherein the award was made").

[3] The claim file notes of Nationwide's claims adjuster, Jim Reilly, contain the following entry dated May 7, 1997: "Rec'd document from claimant adv. of suit filed in DC court." J.A. 410.

As in the arbitration proceeding, neither Mr. Miller, nor the Contractor, nor Nationwide responded to the Application. Having received no response, the Morrels moved for default judgment against both defendants. The Motion for Default Judgment identified the defendants as Paul D. Miller and "The Miller Group Construction Company, Inc." On July 18, 1997, the district court for the District of Columbia granted the Morrels' Motion for Default Judgment and awarded the Morrels judgment in the sum of $172,762.88 against both defendants.

On July 28, 1997, the Morrels wrote Nationwide and demanded that it satisfy the District of Columbia judgment. Nationwide refused. In its letter of August 22, 1997, Nationwide explained that the Contractor had failed to meet its obligations under its liability insurance policy with Nationwide (the "Policy"). More specifically, Nationwide claimed that, in violation of the Policy, the Contractor had failed to (1) assist Nationwide in investigating the Morrels' claim; (2) notify Nationwide that the Morrels had sued the Contractor; and (3) send Nationwide copies of any documents relating to the Morrels' suit or otherwise cooperate in the defense of that suit. Given these facts, Nationwide argued that the Contractor's breach excused Nationwide from paying the Morrels' claim.

In December 1997, the Morrels attempted to execute the District of Columbia judgment on the Contractor, but the United States Marshal's Service was unable, after repeated attempts, to locate Paul Miller, and the judgment was returned unsatisfied.

On January 26, 1998, the Morrels initiated this diversity action against Nationwide in the district court for the Eastern District of Virginia. The Morrels sued under Section 38.2-2200 of the Virginia Code, which authorizes "direct action" suits against liability insurers. Both parties moved for summary judgment, and the district court ruled in favor of the Morrels. It concluded that the District of Columbia judgment was facially valid and that, as a result, the district court lacked authority to look behind or set aside that judgment. Additionally, the district court found that Nationwide had delayed too long in notifying the Morrels that it would invoke the Contractor's failure to perform under the Policy as a defense to liability. Consequently, the

4

district court concluded that Nationwide had waived any defense arising out of its insured's breach of the Policy.

Nationwide now appeals to this court, contesting the validity of the District of Columbia judgment in favor of the Morrels and the district court's conclusion that Nationwide had waived its defenses based on the Contractor's breach of the Policy.

II.

Section 38.2-2000 of the Virginia Code required Nationwide to include language in the Policy providing for "direct action" against Nationwide by certain judgment creditors of its insured:

> No policy or contract insuring or indemnifying against liability for . . . injury to or destruction of property, shall be issued and delivered in this Commonwealth unless it contains in substance the following provisions or other provisions that are at least equally favorable to the insured and to judgment creditors:
>
> . . .
>
> That if execution on a judgment against the insured or his personal representative is returned unsatisfied in an action brought to recover damages for injury sustained or for loss or damage incurred during the life of the policy or contract, then an action may be maintained against the insurer under the terms of the policy or contract for the amount of the judgment . . . .

Va. Code Ann. § 38.2-2200 (Michie 1994). The Policy contains language equivalent to that required by Section 38.2-2200.[4]

_____

[4] Subsection IV.3 of the Policy, entitled "Legal Action Against Us," authorizes direct action suits against Nationwide under certain circumstances:

> No person or organization has a right under this Coverage Part . . . [t]o sue us on this Coverage Part unless all of its terms have been fully complied with.

5

Nationwide's challenge to the district court's grant of summary judgment arises from the language of Section 38.2-2200. First, Nationwide argues that a "judgment against the insured"--on which a direct action could be based--must be a valid judgment. According to Nationwide, the judgment the Morrels obtained in the district court for the District of Columbia was tainted by fraud and improper service; Nationwide contends that, consequently, the Morrels may not now enforce the judgment against them. Second, Nationwide argues that, even if the judgment is valid, the Morrels may not collect "under the terms of the [insurance] policy," because the Contractor has

breached the Policy.

Having reviewed the district court's grant of summary judgment de novo, we disagree with Nationwide. See Monumental Paving & Excavating, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co. , 176 F.3d 794, 797 (4th Cir. 1999).[5] Viewing the record in the light most favorable to Nationwide, we are satisfied that, as a matter of law, (1) the District of Columbia judgment was valid, and (2) Nationwide waived its right to rely on its claim of the insured's breach as a defense to the Morrels' action. We therefore affirm.

_____

> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

J.A. 37.

[5] Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). In conducting our de novo review of the district court's decision on summary judgment, we consider the facts in the light most favorable to the non-moving party, here, Nationwide. Id. at 255.

6

A.

1.

Before reaching the substance of Nationwide's challenge to the District of Columbia judgment, we address a procedural matter that caused some confusion below. The district court concluded that, because the District of Columbia judgment appeared to be valid on its face, the district court lacked authority to look behind the judgment to determine whether it had been properly issued. Instead, the district court suggested that Nationwide could attack the District of Columbia judgment only in the court that had issued it.

The district court underestimated its authority here. Rule 60(b) of the Federal Rules of Civil Procedure permits a district court to "entertain an independent action to relieve a party from a judgment or suspend its operation." See, e.g., Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 986 (4th Cir. 1987) (district court may hear independent action alleging that judgment resulted from fraud on the court). Unlike a motion for relief under Rule 60(b)--which may be brought only by, or on behalf of, a party to the action that generated the contested judgment--an "independent action" under Rule 60(b) may be brought by one who was not a party to the original action. See Aetna Cas. & Sur. Co. v. Abbott, 130 F.2d 40 (4th Cir. 1942); 7 James William Moore, Moore's Federal Practice ¶ 60.36, at 60-369 (1996) ("[O]ne not a party to a suit . . . may, when warranted by equitable principles, attack by independent action a judgment obtained by the fraud of one of the parties . . . if it affects his legal interests.").

Further, and also in contrast to a motion for relief, an independent action may be brought in a court other than the one that issued the contested order: "A federal court can entertain an original action to enjoin or otherwise grant relief from a judgment . . . rendered not only by it, but also by another federal court." 7 Moore's Federal Practice at 60-366; see also Abbott, 130 F.2d at 42 (independent action may be brought in federal court to challenge state court judgment). Independent actions may be brought offensively--that is, by a plaintiff-- or they may be raised by way of defense to a suit seeking to enforce the contested judgment. 7 Moore's Federal Practice at 60-370 ("If an

7

action is brought in a federal court, the principles of the independent action may be used defensively to defeat plaintiff's recovery."); see Abbott, 130 F.2d at 42 (fraud raised as defense to enforcement of a judgment to which defendant was not a party).**6**

The facts of Aetna Casualty & Surety Co. v. Abbott are analogous to this case. In Abbott, a bank customer won a judgment in Maryland state court against Takoma Park Bank, based on the disappearance of property from the customer's safe deposit box at the bank. When the judgment was returned unsatisfied, the customer sought to enforce the judgment against the bank's liability insurer in the United States District Court for the District of Maryland. The insurer countered that the state court judgment was void because the plaintiff and the bank had conspired to defraud the state court. Id. at 41. The district court disagreed and granted judgment on the pleadings for the bank customer.

On appeal, this court addressed the insurer's fraud defense. Id. at 43. Importantly, we did not conclude that the facial validity of the state court judgment barred our substantive review of the insurer's fraud defense. Instead, we rejected the fraud allegations on their merits, holding that the insurer had not stated them with particularity sufficient to satisfy Federal Rule of Civil Procedure 9(b). Id. at 43-44.

Here, as in Abbott, the plaintiffs obtained a judgment in another jurisdiction against the defendant's insured, and they now seek to enforce it in the Eastern District of Virginia against the insurer. The insurer now, as in Abbott, raises equitable defenses to the judgment, including contentions that the judgment is tainted by fraud. As a result, the district court was permitted to treat Nationwide's defenses

_____

**6** A party wishing to assert an independent action defensively should plead those defenses as affirmative defenses or compulsory counterclaims. 7 Moore's Federal Practice at 60-370 n.27. We note that Nationwide did not plead fraud and insufficient process as either affirmative defenses or counterclaims. Nevertheless--and especially because we resolve these issues against Nationwide on the merits--we will not reject Nationwide's defenses on the grounds that they were not properly pleaded. We note, however, that proper pleading of these defenses might well have alerted the district court to the source of its authority to look behind the District of Columbia judgment.

8

as a Rule 60(b) independent action and address them on their merits --as we did in Abbott--rather than simply deferring to the facial validity of the District of Columbia judgment. We turn now to the merits of Nationwide's defenses.

2.

Nationwide first argues that the default judgment against its insured, The Miller Group Construction Company, Inc., is defective because the Application to Correct or Vacate, filed in the United States District Court for the District of Columbia, which gave rise to this judgment, failed to name, and was not served on, its insured. Nationwide grounds this argument on the fact that the Application named as a defendant "The Miller Group Construction Company," rather than The Miller Group Construction Company, Inc. The affidavit of service for the Application likewise named "The Miller Group Construction Company" as the party served.

Nationwide's argument is premised on a thin reed--a misnomer in the spelling of the name of its insured--and is meritless. It has long been the rule in this circuit that service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way. As we recognized many years ago:

> A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else . . . . As a general rule the misnomer of a corporation in a notice, summons . . . or other step in a judicial proceeding is immaterial if it appears that [the corporation] could not have been, or was not, misled.

United States v. A.H. Fischer Lumber Co., 162 F.2d 872, 873 (4th Cir. 1947) (citations omitted).

9

Here, there is simply no possibility that Paul Miller, the president of the insured corporation who accepted service on its behalf, did not understand that the Application filed by the Morrels naming "The Miller Group Construction Company" sought to bring The Miller Group Construction Company, Inc. into court. The lack of the abbreviation "Inc." misled no one. Indeed, we have held that the inclusion of an unnecessary "Inc." in a defendant's name does not make the complaint defective. A.H. Fischer Lumber Co., 162 F.2d at 873. The absence of an appropriate "Inc." is likewise irrelevant here.

Moreover, the body of the Application refers to both the construction project performed by the Contractor and the ensuing arbitration, to which the Contractor was indisputably a party. [7] Perhaps most significantly, a copy of the construction contract giving rise to this entire controversy was attached to the Application; the contract is between the Morrels and "The Miller Group Construction Co. Inc." If there was any confusion as to what business entity the Application sought to name, the allegations in the Application and its attachments dispelled that confusion. See Barsten v. Department of Interior, 896 F.2d 422, 423 (9th Cir. 1990) (technical misnaming of defendant insignificant where complaint and accompanying documents make defendant's identity clear); Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082 (9th Cir. 1983) (same).

Finally, Nationwide's own correspondence with the Morrels points out the unlikelihood that the Application could have caused any confusion. In its letter of August 22, 1997, Nationwide refers to its insured alternately as "The Miller Group Construction Company, Inc." and "The Miller Group Construction Company."[8] Having used

---

[7] Nationwide attempts to create an argument out of the Application's description of the corporate defendant as "a sole proprietorship whose corporate existence was terminated by the Commonwealth of Virginia on September 9, 1994." Rather than confusing the issue, this description appears to be aimed at carefully naming the company in a legally accurate manner. Whether the company had, or had not, technically converted into a sole proprietorship when it lost its corporate charter, all parties agree that its charter was revoked on September 9, 1994. Consequently, this description does not invalidate the Application.

[8] In pertinent part, Nationwide's letter read as follows:

10

these terms interchangeably itself, it is somewhat disingenuous of Nationwide to argue that the one term accurately identifies its insured, while the other refers to "another company" altogether. We therefore conclude that the Contractor was properly brought into the Morrels' suit. A.H. Fischer Lumber Co., 162 F.2d at 873.

3.

In a related argument, Nationwide claims that the District of Columbia judgment is the product of fraud, because the final judgment itself names "The Miller Group Construction Company, Inc.," while the Application had named "The Miller Group Construction Company." Nationwide argues that this change in names was tantamount to the Morrels suing one company and then having judgment entered against another. This argument also is entirely meritless.

As explained above, the Morrels' Application was sufficient to bring the Contractor before the district court for the District of Columbia, even though the Application did not get the company's name precisely right. See id. As a result, we conclude that neither the court nor the Contractor could have been defrauded when, after the Contractor was properly made a party to the suit, a final judgment was entered that did get the Contractor's name precisely right. Changing of the defendant's name in the judgment form did not have the

---

> Following the initial inspection of the Morrel's[sic] house, Mr. Paul Miller nor anyone else associated with The Miller Group Construction Company did not provide Nationwide with any further assistance in resolving this claim . . . . The insured has an obligation to send us copies of any legal papers received in connection with the suit and cooperate with the investigation and defense of the suit. Again, the Miller Group Construction Company failed to meet any of these policy requirements.
>
> In summary, the insured did not meet the requirements of their policy and therefore Nationwide has no obligation to pay any portion of the judgment against Paul Miller and The Miller Group Construction Company, Inc.

J.A. 477 (emphasis added).

11

effect of entering judgment against "another company"; it simply corrected the name of a company that already was a defendant.

It is unclear in the record why the misnomer occurred and why the Contractor is named differently in the Application and the final judgment. Assuming that the Morrels discovered the error in the Application after it had been filed, the better practice would have been to move for permission to amend the corporate defendant's name under Rule 15(a) of the Federal Rules of Civil Procedure. Nevertheless, the final judgment remains proper and binding on the Contractor even without such an amendment. We addressed exactly this issue in A.H. Fischer Lumber Co. There, although the defendant had not been named with absolute accuracy--the abbreviation"Inc." was incorrectly added to the end of its name--the complaint had nevertheless made the defendant subject to the district court's jurisdiction: "The defendant had unquestionably been brought into the case, and . . . would have been bound without amendment[of the complaint] by any judgment that might have been rendered therein." Id. at 874 (emphasis added).

Because the Contractor had been served as effectively as if its correct corporate name had appeared on the Application, the inclusion of its correct name on the final judgment changed no legal aspect of the case and did not prejudice Nationwide. Consequently, this misnomer did not serve in any way to defraud the court or any party to the proceeding.

B.

Finally, Nationwide contends that the Morrels cannot recover against it "under the terms of the policy," within the meaning of Section 38-2.200(2) of the Virginia Code, because the Contractor breached its obligations to Nationwide under the Policy. Although breach of a policy by its insured can protect an insurer from a direct action suit, Nationwide has waived its right to rely on the Contractor's asserted breach here.

A claimant seeking to bring a direct action against an insurer in Virginia stands in the shoes of the insured against whom his claim arose. Consequently, if the insured has breached the insurance policy,

12

the insurer may assert this breach as a bar to the third-party claimant's recovery. E.g., Liberty Mut. Ins. Co. v. Safeco Ins. Co. of America, 288 S.E.2d 469 (Va. 1982). But the Virginia Code requires an insurer to promptly notify a claimant of its intention to defend based on an insured's breach of the underlying policy:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured and the insurer intends to rely on the breach in defense of liability for any claim within the terms of the policy, the insurer shall notify the claimant. . . of its intention to rely on the breach as a defense. Notification shall be given within twenty days after discovery by the insurer or any of its agents of the breach or of the claim, whichever is later.

Va. Code Ann. § 38.2-2226 (Michie 1994) (amended 1997) (emphasis added).**9**

The ultimate purpose of the statute, as explained by the Supreme Court of Virginia, is to protect claimants such as the Morrels:

> The obvious purpose of the statute is to require a liability insurer that intends to rely on a breach of the terms and conditions of the policy contract, in defense of any claim under the policy, to furnish prompt notice of such intention to the

---

**9** The parties agree that the pre-1997 version of the statute applies to the dispute at issue. Section 38-2.2226 was amended in 1997 and currently reads as follows:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach. Notification shall be given within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later . . . . Failure to give the notice within forty-five days will result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

Va. Code Ann. § 38.2-2226 (Michie Supp. 1998).

13

> claimant . . . so that steps may be taken by the claimant, a stranger to the insurance contract, to protect his rights.

Liberty Mut. Ins. Co., 288 S.E.2d at 474. Toward this end, federal and state courts interpreting Section 38.2-2226 and its predecessor statute have concluded that an insurer which fails to notify a claimant within the twenty-day statutory period waives its right to rely on the insured's breach. Vermont Mut. Ins. Co. v. Everette, 875 F. Supp. 1181, 1189 (E.D. Va. 1995); Federal Ins. Co. v. Nationwide Mut. Ins. Co., 448 F. Supp. 723 (W.D. Va. 1978) (interpreting Va. Code Ann. § 38.1-389.1, the predecessor statute to § 38.2-2226, as providing for waiver of defenses where the rights of a claimant may be prejudiced); Berry v. State Farm Mut. Auto. Ins. Co., 340 F. Supp. 228, 231 (E.D. Va. 1972) (same); Maxey v. Doe, 225 S.E.2d 359, 361 (Va. 1976) (same).

Here, Nationwide argues that the Contractor breached the provisions of the Policy requiring the Contractor to assist Nationwide in the event of a lawsuit. For example, subsection IV.2(c) of the Policy requires the Contractor to "[c]ooperate with[Nationwide] in the investigation, settlement or defense of the claim or suit." J.A. 37. Nationwide contends that the Contractor provided no assistance whatsoever, and thus breached this provision of the Policy.

Assuming Nationwide is correct on this point, the question becomes whether--and if so, when--Nationwide notified the Morrels of its intention to rely on the Contractor's breach in defense of the Morrels' claim. The only effective notification in the record is Nationwide's August 22, 1997 letter to the Morrels' counsel.[10] In that

_____

[10] Nationwide suggests that it gave the Morrels appropriate notice in late 1996, when its claims adjuster, Jim Reilly, told the Morrels that "because he was unable to contact The Miller Group Construction Company, Inc. or Mr. Paul Miller, he was unable to respond to the Morrels' claims and that he would be unable to respond to the Morrels' claims until he had the cooperation of the policyholder . . . ." J.A. 442. Assuming such a conversation took place, its content, as described by Nationwide itself, does not satisfy the notification requirements of § 38.2-2226. Such notice, at a minimum, must alert the claimant to the possibility that the insurer will completely deny coverage because of its insured's non-

14

letter, Nationwide does clearly satisfy the notification requirements of Section 38.2-2226: "Unfortunately, Nationwide will not be making any payment on behalf of our insured for this claim. The policy holder failed to meet his policy conditions throughout the entire claim." J.A. 477.

Because Nationwide notified the Morrels on August 22, 1997, that it would rely on its insured's breach to defend against the Morrels' claim, this notice was timely only if Nationwide "discovered" both the Morrels' claim and the Contractor's breach no earlier than August 2, 1997. § 38.2-2226 (amended 1997). Nationwide's own pleadings in the district court disclose that it had notice of the claim and the breach long before August 2, 1997. First, in its answers to the Morrels' interrogatories, Nationwide explains that it sent an investigative engineer to the Morrels' house to investigate their claim on September 6, 1995. J.A. 438. Unquestionably, then, Nationwide knew of the Morrels' claim no later than this date, approximately twenty-three months before the notice deadline of Section 38.2-2226.

Second, Nationwide had discovered the Contractor's breach of the Policy before August 2, 1997. The Supreme Court of Virginia has described "discovery" of an insured's breach as a two-step process: "`[D]iscovery' of a breach entails, first, awareness by the insurer of facts tending to show there has been a violation of the policy provisions and, second, evaluation of those known facts culminating in a decision that a breach apparently has occurred." Liberty Mut. Ins. Co., 288 S.E.2d at 474.

_____

cooperation. See, e.g., Liberty Mut. Ins. Co., 288 S.E.2d at 472, 475 (although conditional, insurer's notice satisfied § 38.2-226 when it told claimant that insured's failure to cooperate "could result in a full denial of coverage to our insured"). By contrast, Nationwide does not claim that, before August 1997, it ever told the Morrels that it might deny coverage to the Contractor altogether. Its agent simply says he told the Morrels that Nationwide "would be unable to respond to the Morrels' claims until [Reilly] had the cooperation of the policyholder." Such a statement, while alerting the Morrels that processing of their claim might be delayed, does not notify them that Nationwide is considering denying coverage altogether.

15

In its opposition to the Morrels' summary judgment motion, Nationwide demonstrates that it had effectively discovered the Contractor's breach by the time it received the arbitration award. At this point, Nationwide admits that it was aware of the Contractor's "previous breach of the terms and conditions of the policy." J.A. 421. Such a statement indicates that, when it received the award, Nationwide was aware not only of the underlying facts, but had determined that they constituted a breach of the Policy.

Indeed, Nationwide cannot have concluded otherwise. In its letter of August 22, 1997, Nationwide acknowledges that the Contractor had not met "any" of its policy requirements since the Morrels' home was first inspected; this inspection took place no later than September 1995. Consequently, in May 1997, Nationwide had known for at least nineteen months that the Contractor was not upholding its responsibilities under the Policy. Also at this time, Nationwide received the arbitration award--not from its insured, but from the Morrels--which states on its face that Paul Miller did not participate in the arbitration, either for himself or on behalf of the Contractor. The award thus notified Nationwide that its insured had defaulted in the arbitration, all apparently without ever discussing the arbitration with Nationwide. Knowing these facts, Nationwide can only have concluded that the Contractor had breached the Policy.

At the latest, then, Nationwide had discovered the Contractor's breach by May 7, 1997, when it received from the Morrels a copy of the District of Columbia pleadings, to which the arbitration award was attached as an exhibit. Because it was aware of the Morrels' claim by that time as well, Nationwide had discovered both this claim and the Contractor's breach more than three months before it notified the Morrels of its intent to rely on the breach as a defense to the Morrels' claim. Nationwide therefore did not satisfy the statutory notification requirement of Section 38.2-2226, and has waived its right to raise the Contractor's breach as a shield to the Morrels' claim. Everette, 875 F. Supp. at 1189.

Nationwide nevertheless contends that receipt of the arbitration award did not trigger its notice obligations under Section 38.2-2226, because the award found the Contractor not liable to the Morrels. Given this finding, Nationwide contends that it had no reason to then

notify the Morrels of its intent to rely on its insured's breach. While Nationwide convincingly explains why it decided not to send a Section 38.2-2226 notice to the Morrels after receiving the arbitration award, it does not explain why it should be relieved of the consequences of that decision.

The twenty-day clock of Section 38.2-2226 is not triggered by an insurer's determination that, for strategic or tactical reasons, it will definitely rely on its insured's breach. Instead, the statute starts the twenty-day period when the insurer has discovered both the claim and the breach of the policy. Thus an insurer may not simply withhold the required notice until it makes a final determination to deny coverage under the policy. Everette, 875 F. Supp. at 1190. Consequently, the substance of the arbitration award had no effect on Nationwide's obligations under Section 38.2-2226, and we agree with the district court that Nationwide has forfeited its defenses that arise from the Contractor's breach of the Policy.

III.

Having rejected Nationwide's equitable challenge to the District of Columbia order, and having determined that Nationwide waived its defenses based on the Contractor's apparent breach of the Policy, we affirm the district court's grant of summary judgment in favor of the Morrels.

AFFIRMED

17