**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PENN AMERICA INSURANCE COMPANY,
    *Plaintiff-Appellee,*

v.

JOSEPH A. VALADE, d/b/a JAV,
Incorporated,
    *Defendant-Appellant,*

and

EDMOND R. McKEON, d/b/a Exterior
Wall Systems of North Carolina,
    *Defendant.*

No. 01-1546

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CA-00-48-7-F)

Argued: November 1, 2001

Decided: January 25, 2002

Before WILKINSON, Chief Judge, and WILKINS and
KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Wilkins wrote an
opinion concurring in part and dissenting in part.

_____

## COUNSEL

**ARGUED:** Maynard Moore Brown, JOHNSON & LAMBETH, Wilmington, North Carolina, for Appellant. Brian Orlando Beverly,

YOUNG, MOORE & HENDERSON, P.A., Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

On March 16, 2001, in this declaratory judgment proceeding relating to insurance coverage, the district court for the Eastern District of North Carolina awarded summary judgment to Penn America Insurance Company ("Penn America"). Joseph A. Valade, doing business as JAV, Incorporated ("JAV"), appeals the adverse ruling of the district court, maintaining that it erroneously ruled in favor of Penn America. As explained below, we affirm the district court's award of summary judgment.

I.

In January 1998, JAV entered into a contract with a townhouse community in southeastern North Carolina, known as Pembroke at Land Fall Townhouses Homeowners' Association ("Pembroke"), to remove synthetic stucco from several private homes at Pembroke and replace it with a substance called synthetic hard-coat stucco. JAV subcontracted to Edmond R. McKeon, doing business as Exterior Wall Systems of North Carolina ("Exterior Wall"), the hard-coat stucco work it had agreed to perform at Pembroke. After Exterior Wall completed its stucco work, it was fully paid.

Thereafter, JAV received complaints from Pembroke concerning damage to Pembroke properties (the "Pembroke Damage") that had occurred during the work subcontracted to Exterior Wall. JAV demanded that Exterior Wall repair the Pembroke Damage, but Exterior Wall refused. As a result, in order to meet its contractual obliga-

tions to Pembroke, JAV repaired the Pembroke Damage caused by Exterior Wall.

Exterior Wall was the insured under a General Commercial Liability Policy (the "Policy") issued by Penn America, and the parties agree that the Policy was in effect when Exterior Wall caused the Pembroke Damage. When Exterior Wall refused to repair the properties, JAV notified Penn America, as Exterior Wall's insurer, that it possessed a claim against Exterior Wall for the Pembroke Damage. Penn America investigated JAV's claim, but denied coverage.

In March 1999, JAV filed a lawsuit against Exterior Wall in North Carolina state court (the "North Carolina Lawsuit"), alleging that it was entitled to recover from Exterior Wall for the Pembroke Damage. In March 2000, Penn America filed this declaratory judgment action in the Eastern District of North Carolina. Penn America named both Exterior Wall and JAV as defendants in the declaratory judgment proceeding, seeking a declaration that "Penn America has no duty to defend Exterior Wall in [the North Carolina Lawsuit], and no obligation to indemnify Exterior Wall for any settlement or judgment for damages arising out of the underlying civil action." On June 23, 2000, the district court entered default judgment against Exterior Wall because it had failed to answer or respond to Penn America's complaint. In its default judgment, the court ruled that, under the Policy, Penn America possessed no duty to defend or indemnify Exterior Wall. The court decreed, by way of default, that Penn America was relieved of any duty to defend Exterior Wall and had no obligation to indemnify for any damages arising out of the underlying civil action. Thereafter, on December 28, 2000, with JAV still a defendant in the case, Penn America moved for summary judgment against JAV maintaining that, under the Policy, it had no duty either to defend or to indemnify in the North Carolina Lawsuit.* On March 16, 2001, the

---

*In seeking summary judgment against JAV, and in this appeal, Penn America has never maintained that JAV was bound by the district court's default judgment against Exterior Wall. Indeed, as we point out in Part II, *infra*, JAV was not bound by the default judgment because, as an injured third party, it was entitled to defend on the merits in the declaratory judgment proceeding. *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 355 (3rd Cir. 1986) (recognizing that "it would be anomalous to hold that the [third parties] should not be given an opportunity to establish their case against [the insurer] because of a default which they could not prevent").

district court granted Penn America's summary judgment motion. This appeal followed.

## II.

Penn America and JAV, the parties to this appeal, assert that we possess jurisdiction to hear and decide it pursuant to 28 U.S.C. § 1291. Nevertheless, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, we are obligated to examine the question of subject matter jurisdiction "[w]henever it appears" it may be lacking.[2] 5A Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1393 (2d ed. 1990 & Supp. 2001) (collecting cases). The posture of this appeal — an insurer (Penn America) maintaining a declaratory judgment action against an injured third party (JAV) after default judgment has been entered against the insured (Exterior Wall) — creates the appearance that we may lack subject matter jurisdiction. We must therefore examine whether we possess jurisdiction over this appeal.

The Supreme Court, in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), determined that an "actual controversy" exists between an insurer, on the one hand, and a third party injured by the insured, on the other, when the insurer has initiated a declaratory judgment action against both its insured and the injured third party seeking court determination of its obligations under an insurance policy. *Id.* at 273-74. We had occasion to apply the principle of *Maryland Casualty* in our decision in *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). Writing for our Court, Judge Phillips concluded as follows:

> [a] dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an "actual controversy" . . ., even though the tort claimant has not yet reduced his claim against the insured to judgment.

---

[2]Under Rule 12(h)(3) of the Federal Rules of Civil Procedure:

Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

*Id.* at 375 n.3. In so concluding, we recognized that the third party's interest in defining the scope of insurance coverage is independent of the interest of the insured. When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing — independent of that of the insured — to defend itself in the declaratory judgment proceeding. *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 353-56 (3rd Cir. 1986) (stating that injured third party "ha[s] standing to defend the declaratory judgment action despite the absence of . . . the actual insured"); *Hawkeye-Sec. Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962) ("It would be anomalous to hold here that an actual controversy exists between [an injured third party] and [an insurer] and yet deny [the injured third party] the right to participate in the controversy."). In this regard, it would be anomalous not to permit the injured third party an opportunity to present its case against the insurer, which initially brought the declaratory judgment action, after the insured defaulted.[3]

Accordingly, we are constrained to conclude that we possess subject matter jurisdiction over this appeal. The default judgment entered by the district court against Penn America's insured, Exterior Wall, does not negate the case or controversy existing between the insurer, Penn America, and the injured third party, JAV. Our jurisdiction therefore arises pursuant to 28 U.S.C. § 1291, and we will proceed to consider the merits of this appeal.

III.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 222 n.5 (4th Cir. 1999) (internal quotations and citations omitted). This Court reviews de novo a district court's award of summary judgment. *Id.* In conducting such de novo review, "we consider the facts in the light most favorable to the non-moving party." *Id.*

---

[3]*See supra* note 1 and accompanying text.

IV.

On appeal, JAV maintains that the district court committed reversible error in two specific respects. First, it contends that the court erred by awarding Penn America summary judgment on the existence of a duty under the Policy to defend Exterior Wall. Second, JAV asserts that the district court erred by concluding that there were no genuine issues of material fact regarding whether the claims alleged in the North Carolina Lawsuit fell within the coverage provisions of the Policy. We examine each of these contentions in turn.

A.

First, JAV contends that the district court incorrectly determined that Penn America had no duty to defend Exterior Wall in the North Carolina Lawsuit. Under North Carolina law,[4] an insurer's duty to defend arises before the merits of the claim against the insured are adjudicated, *County of Guilford v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 422 S.E.2d 360, 363 (N.C. Ct. App. 1992). And an insurer's duty to defend is broader than its obligation to indemnify under the terms of an insurance policy. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986). Moreover, an insurer may possess a duty to defend its insured "even in an action in which no damages are ultimately awarded." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 504 S.E.2d 574, 578 (N.C. Ct. App. 1998).

The courts of North Carolina utilize the "comparison test" to decide if an insurer possesses a duty to defend its insured. *Waste Mgmt.*, 340 S.E.2d at 378. Under the "comparison test," the allegations made in the underlying complaint against the insured are compared to the policy provisions, and if the allegations represent a risk covered by the insurance policy, the insurer possesses a duty to defend its insured. *Id.* And, under North Carolina law, "any doubt as to coverage must be resolved in favor of the insured." *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 386 S.E.2d 762, 763-64 (N.C. Ct. App. 1990).

---

[4]The parties agree that this insurance coverage dispute is governed by the law of North Carolina.

Penn America is obligated under the Policy only to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The Policy covers "'property damage' only if: . . . [t]he . . . 'property damage' is caused by an 'occurrence.'" An "occurrence" is then defined to "mean[ ] an accident," but the Policy fails to define the term "accident."

The Supreme Court of North Carolina has long defined the term "accident," in the context of a general liability insurance policy, as an unforeseen, unexpected, unusual, or unprecedented consequence. *Waste Mgmt.*, 340 S.E.2d at 379; *Tayloe v. Hartford Accident & Indem. Co.*, 127 S.E.2d 238, 240-41 (N.C. 1962). In so doing, the court has consistently focused on the expectation or foresight of the insured, and it has determined that "potentially damaging events that can be anticipated are not 'occurrences' within the meaning of the policy." *Waste Mgmt.*, 340 S.E.2d at 380. Accordingly, an "accident" does not occur when property damage is caused by defective or poor workmanship, because an insured should foresee and expect the resulting damage. *See Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 581-83 (E.D.N.C. 2000) (recognizing that faulty workmanship does not constitute "accident" under General Commercial Liability Policy).[5]

---

[5]The district court's determination in *Vick Construction* that faulty workmanship does not constitute an "accident" under North Carolina law is consistent with authority from other jurisdictions. *See generally Reliance Ins. Co. v. Magavero*, 640 F. Supp. 84, 86 (D. Md. 1986) (stating that "'occurrence' does not include the normal, expected consequences of poor workmanship" and that "it still connotes the idea of 'accident'" which means "an event or condition occurring by chance or arising from unknown or remote causes or lack of intention or necessity"); *Indiana Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 73 (Ill. App. Ct. 1993) (determining no "accident" for cracks and loose paint caused by defective installation of concrete flooring, and stating "[a]n accident is an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character," and further observing that "[t]he natural and ordinary consequences of an act do not constitute an accident").

When the comparison test is applied here, i.e., the allegations in the North Carolina Lawsuit are compared to the provisions of the Policy, it is apparent that the allegations do not implicate a risk covered by the Policy. JAV alleged in the North Carolina Lawsuit that Exterior Wall, "in installing the conventional hard-coat stucco, damaged Pembroke at Landfall's property including damage to driveways, patios, chimneys, painted walls, stone walkways, slate roofs, air conditioners and landscaping." JAV, however, made no allegations concerning how the Pembroke Damage occurred, even though its counsel acknowledged at oral argument that part of Exterior Wall's work included the effort customarily associated with cleaning up a worksite following application of hard-coat stucco.

In short, in order for the Pembroke Damage to be a covered risk under the Policy, JAV was required to allege in the North Carolina Lawsuit that Exterior Wall caused it and that it was the result of an "accident." JAV failed, however, to make any such allegation. As such, the district court did not err in deciding that Penn America possessed no duty to defend Exterior Wall in the North Carolina Lawsuit.

B.

JAV also maintains on appeal that the district court erred in awarding summary judgment to Penn America on the issue of indemnity, asserting that a genuine issue of material fact existed concerning whether the Pembroke Damage constituted an "occurrence" under the Policy. Under the law of North Carolina, a party seeking coverage under an insurance policy bears the burden of proving that any claimed damage falls within the policy's terms. *Hobson Constr. Co. v. Great Am. Ins. Co.*, 322 S.E.2d 632, 635 (N.C. Ct. App. 1984) ("We note that the insured . . . has the burden of bringing itself within the insuring language of the policy."). This burden of proof remains unchanged when the insurer initiates a declaratory judgment proceeding concerning its coverage obligations under an insurance policy. *Id.* As such, JAV must forecast evidence sufficient to demonstrate a genuine issue of material fact on whether the Pembroke Damage was the foreseen, expected, usual, or normal consequence of poor or defective workmanship. Otherwise, such damage does not fall within the Policy's indemnity provisions.

In addition to its failure to allege in the North Carolina Lawsuit that the Pembroke Damage was caused by an "accident," JAV did not forecast any evidence to demonstrate a genuine issue of material fact concerning whether such damage was the expected consequence of defective or poor workmanship. As a result of this failure, the district court correctly concluded that there was no genuine issue of material fact regarding whether the Pembroke Damage was covered by the Policy. Accordingly, the court did not err in awarding summary judgment to Penn America on the indemnity issue.[6]

## V.

Pursuant to the foregoing, the district court's award of summary judgment to Penn America is affirmed.

*AFFIRMED*

WILKINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the part of the majority opinion affirming the grant of summary judgment to Penn America on the indemnity claim. However, I dissent from the majority's affirmance on the duty-to-defend issue.

Under North Carolina law, a liability insurer has a duty to defend a lawsuit against its insured if, from the facts alleged in the complaint, there is even a "possibility" that coverage could exist for some or all of the potential liability from the suit. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 n.2 (N.C. 1986); *see Washington Housing Auth. v. N.C. Housing Auths. Risk Retention Pool*, 502 S.E.2d 626, 629 (N.C. Ct. App. 1998) ("[T]he insured has a right to a defense whenever the allegations show a *potential* that liability

---

[6]In its appeal, Penn America also maintains that five Policy exclusions bar coverage for the Pembroke Damage. These exclusions pertain to "Damage to Property," "Damage to Your Product," "Damage to Your Work," "Damage to Impaired Property Not Physically Injured," and "Recall of Products, Work, or Impaired Property." We need not analyze the application of these exclusions because we have determined that the Pembroke Damage does not fall within the scope of the Policy.

will be established within the insurance coverage, and the complaint contains no allegation of facts which would *necessarily* exclude coverage." (internal quotation marks omitted) (alteration in original)). Moreover, "any doubt as to coverage must be resolved in favor of the insured." *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 386 S.E.2d 762, 763-64 (N.C. Ct. App. 1990).

Penn America's policy obligated it to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." J.A. 30. Coverage is provided for "'property damage' only if: . . . [t]he . . . 'property damage' is caused by an 'occurrence.'" *Id.* The policy defines "occurrence" as "an accident," but it does not further define "accident." *Id.* at 40. North Carolina courts have defined "accident" as "an unforeseen event, occurring without the will or design of the person whose mere act causes it." *Tayloe v. Hartford Accident & Indem. Co.*, 127 S.E.2d 238, 239-40 (N.C. 1962) (internal quotation marks omitted). That an insured's employee's work product is substandard does not transform that work into an "accident," as that term is employed here. *See Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 584-86 (E.D.N.C. 1999), *aff'd*, 213 F.3d 634 (4th Cir. 2000) (per curiam) (unpublished table decision). On the other hand, that an unexpected event was proximately caused by an insured's employee's negligence does not prevent it from constituting an "accident." *See Waste Mgmt.*, 340 S.E.2d at 380 (holding that leaching of contaminants into groundwater was an "accident" even though it was allegedly proximately caused by the insured's negligence).

Here, the complaint in the North Carolina lawsuit is silent regarding the nature of the property damage caused by Exterior Wall, how the damage occurred, and whether some or all of it occurred as the result of an accident. The complaint alleges only that Exterior Wall, "in installing . . . conventional hard coat stucco, damaged Pembroke at Landfall's property including damage to driveways, patios, chimneys, painted walls, stone walkways, slate roofs, air conditioners and landscaping." J.A. 15. Thus, the complaint allows for the possibility that at least some of the damage was the result of an accident. For example, Exterior Wall might have been liable for damage that occurred when a negligently placed bucket of stucco fell off of Exterior Wall's scaffolding. *Indeed, Penn America conceded at oral argu-*

*ment that a falling bucket would constitute an "accident" and that damage from a falling bucket could be within the scope of JAV's complaint.* Because the allegations in the complaint do not expressly negate the possibility that some of the damage resulted from an accident, I would hold that the district court erred in granting summary judgment to Penn America on the duty to defend issue.

The majority's decision to affirm is apparently based on JAV's concession at oral argument that Exterior Wall's duties included cleaning up the worksite after applying the stucco. *See ante*, at 8 (noting the concession). The majority appears to believe this fact is significant based on (1) an assumption that all of the damage for which Exterior Wall could be held liable was caused by Exterior Wall's failure to conduct an adequate clean-up, and (2) a conclusion that such a failure would not constitute an "accident." The flaw in this analysis is that the complaint does not allege that all of the damage was caused by a failure to conduct an adequate clean-up, nor does it allege facts from which that proposition would necessarily follow. Accordingly, the complaint allows the possibility that some (if not all) of the damage for which Exterior Wall could be held liable was the result of a covered occurrence.

The majority's decision may also be based on an assumption that because Exterior Wall caused the damage *in the course of* performing its work, any damage was necessarily the result of defective or poor workmanship, rather than an accident. *See ante*, at 7 (noting that damage resulting from poor workmanship is not the result of an accident). Such an assumption is unwarranted because the complaint does not allege that all of the damage resulted from work intentionally performed by Exterior Wall. Rather, it leaves open the possibility that some damage occurred as the result of an unforeseen event, as in the example I have identified.

Finally, the majority's decision may be based on a belief that Penn America had a duty to defend only a suit wherein the complaint specifically alleged that the damage was the result of an accident. *See ante*, at 8-9 (stating that "in order for the Pembroke Damage to be a covered risk under the Policy, JAV was required to allege in the North Carolina Lawsuit that . . . it was the result of an accident"). In that event, the majority has adopted an unduly restrictive reading of

North Carolina law. *See Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 323 S.E.2d 726, 730 (N.C. Ct. App. 1984) (explaining that when "the allegations in the complaint are broad, and uncertain as to specific facts, the insured has a right to a defense whenever the allegations show a *potential* that liability will be established within the insurance coverage" (internal quotation marks omitted)), *rev'd on other grounds*, *Waste Mgmt.*, 340 S.E.2d at 383.[1]

Regardless of the basis for the majority's decision, I do not agree that the district court correctly granted summary judgment to Penn America on the duty-to-defend claim, and I respectfully dissent from that portion of the majority opinion.

---

[1] I also would hold that none of the policy exclusions cited by Penn America eliminated its duty to defend this suit.