UNITED STATES of America

v.

**TUG MARINE VENTURE (ex TRED), etc., et al.**

**No. CCB–96–1090.**

United States District Court, D. Maryland.

June 16, 2000.

---

Lynne A. Battaglia, U.S. Attorney, Baltimore, MD, Patricia A. Smith, Baltimore Police Dept., Office of Legal Affairs, Baltimore, MD, Frank Hunger, U.S. Department of Justice, Washington, DC, for Plaintiff.

David W. Skeen, Wright, Constable and Skeen, Baltimore, MD, for Jon Christiansen, Christiansen Marine, Inc., Christiansen Cheramie Marine, Inc., Defendants.

James W. Bartlett, III, Baltimore, MD, Carrie Blackburn Riley, Kerr McDonald, LLP, Baltimore, MD, for Bay Shore Concrete Corp., cross-claimant.

Marland Hamilton Whitman, Jr., George Whitthorne Kelly, Ober, Kaler, Grimes & Shriver, Baltimore, MD, Hartman E. Blanchard, Jr., Miller and Chevalier, Washington, DC for Recchi America, Inc., cross-defendant.

## *MEMORANDUM*

BLAKE, District Judge.

Now pending before the Court is the Motion to Determine Availability of Insurance Proceeds filed by Defendants/Third–Party Plaintiffs Jon R. Christiansen, Christiansen Marine, Inc. ("CMI"), and Christiansen Services, Inc. ("CSI") (collectively "Defendants") on June 5, 1998. The issue to be decided is whether The Home Insurance Company ("Home"), the protection and indemnity insurer of CMI, is obligated to satisfy a judgment obtained by Recchi America, Inc. ("Recchi") against CMI, in the event that CMI, which currently is bankrupt and not doing business, is unable to pay the judgment out of its own funds. The Defendants seek a ruling that, based on a "pay first" provision included in the insurance contract, Home would not be liable for any judgment obtained by Recchi against CMI "unless and until such payment is made by the insured, CMI." Defs. Mem. Supp. Mot. to Determine Avail. Ins. Proceeds ("Defs. June 5 Mem."), p. 6. On December 4, 1998, the Court denied this motion to the extent it relied on federal admiralty law, but permitted the parties to conduct additional discovery and submit briefing on whether

the applicable state law obligates Home to satisfy this judgment. On September 1, 1999, Recchi filed a memorandum in support of availability of insurance proceeds.[1] This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the Court finds that Home would be liable for a judgment obtained by Recchi against CMI, even if CMI is unable to make payment. Therefore, the Court will deny the Defendants' June 5, 1998 motion and grant Recchi's September 1, 1999 motion.

## BACKGROUND

Recchi is a Florida corporation with its principal place of business in Miami, Florida. (Recchi Mem. Supp. Avail. Ins. Proceeds ["Recchi Sept. 1 Mem."], p. 4) On April 7, 1992, Recchi entered into a contract with Bayshore Concrete Products Corporation ("Bayshore") whereby Bayshore would manufacture concrete bridge segments for a Delaware highway bridge spanning the Chesapeake and Delaware Canal ("C & D Canal site"). (Recchi Sept. 1 Mem., Ex. 5) The parts were to be manufactured at Bayshore's facility in Cape Charles, Virginia. (*Id.*)

After entering into this agreement, Recchi began negotiations with CMI, a Virginia corporation with its principal place of business in Hampton, Virginia, for CMI to tow the Bayshore parts from Cape Charles to the C & D Canal site. (Recchi Sept. 1 Mem., Ex. 2; CMI Mem. Opp'n Recchi Sept. 1 Mem. ["CMI Oct. 1 Mem."], Ex. 5) Over the next few months, Recchi, through its Delaware branch, and CMI, through the Virginia office, faxed proposed agreements to each other. (CMI Oct. 1 Mem., Exs. 4–6) In addition, Jon Christiansen, on behalf of CMI, visited Recchi's Delaware office on two or three occasions. (Dep. of Brian West, CMI Oct. 1 Mem., Ex. 3 ["West Dep."], p. 26) On October 15, 1992, the parties reached a final agreement ("Towage Agreement"). (CMI Oct. 1

Mem., Ex. 1) The agreement was signed by Recchi in Delaware and then mailed to CMI in Virginia where it was signed by Christiansen. (West Dep., pp. 47–49)

The final agreement provided for CMI to man a tug boat towing two barges containing concrete parts from Bayshore's facilities in Virginia to the C & D Canal site. (CMI Oct. 1 Mem., Ex. 1, ¶¶ 1–2) The voyage would involve traversing waters of Virginia, Maryland, and Delaware, with the majority of the trip passing through Maryland waters. (CMI Oct. 1 Mem., Ex. 7) CMI was not responsible for the loading or off-loading of the parts. (CMI Oct. 1 Mem., Ex. 1, ¶ 4) The agreement provided that, "where applicable," federal maritime law should govern the resolution of any disputes. (*Id.* at ¶ 8)

In April 1993, the barge operated by CMI and carrying the Recchi bridge parts capsized spilling the parts into Maryland waters. (Recchi Sept. 1 Mem., p. 2; CMI Oct. 1 Mem., pp. 6–7) In April 1996, the United States filed a complaint against Recchi, CMI, and others, seeking to recover various costs and civil penalties associated with locating, marking, and removing the concrete bridge parts. The government subsequently dismissed its suit in August 1997, after Recchi and CMI, without prejudice to their respective legal positions, conducted a joint operation to raise the concrete bridge parts and re-deposit them at another Maryland location. (*Id.*) Recchi and CMI have filed cross-claims against each other seeking to recover their losses arising from the accident and cleanup.

In November 1997, all proceedings in this matter were automatically stayed following CMI's commencement of bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Virginia. In March 1998, the bankruptcy judge in that proceeding approved a consent order modifying the automatic stay

---

1. Since CMI filed an opposition to this memorandum, and Recchi filed a reply, the Court will treat Recchi's memorandum as a separate motion.

authorizing this case to go forward as to Recchi's cross-claim against CMI, subject to the conditions (i) that this case "shall proceed to obtain a declaration as to whether insurance proceeds exist under the circumstances of the case and a declaration of [CMI's] liability," (ii) that if insurance proceeds are declared to exist and CMI is found liable, Recchi may proceed against such proceeds, and (iii) that if insurance proceeds are declared not to exist, then Recchi must pursue its remaining claims in the bankruptcy court. *See* Counsels' April 22, 1998 Letter to Court, Exhibit A. Shortly thereafter, the Defendants filed the present motion.

The insurance policy at issue is a $1,000,000 protection and indemnity policy purchased by CMI in October 1992 ("P & I policy"). (CMI Oct. 1 Mem., Ex. 2) The policy was issued by the Georgia branch of Home, a New York corporation with its principal place of business in New York, New York. (CMI Oct. 1 Mem., p. 6; Aff. of Augusto Gonzales, CMI Oct. 1 Mem., Ex. 8 ["Gonzales Aff."], ¶¶ 1–2) The Ware Company ("Ware"), a Virginia insurance broker, acted as CMI's broker in obtaining the P & I policy. (Aff. of Phillip Quam, Recchi Sept. 1 Mem., Ex. 8 ["Quam Aff."], ¶¶ 1 & 3) Negotiations occurred by phone calls or faxes between Virginia and Atlanta. (Quam Aff., § 3) Though it was Ware's general practice to countersign insurance policies before delivering them to the insured, Ware was unable to find a countersigned copy of the P & I policy. (*Id.* at ¶¶ 5–6) The P & I policy itself, however, states that it is not valid unless countersigned. (CMI Oct. 1 Mem., Ex. 2)

The P & I policy included the following "pay first" provision:

> In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured ... such sums as the assured ... *shall have become legally liable to pay and shall have paid* on account of ... [l]oss of, or damage to,

or expense in connection with any fixed or movable object or property of whatever nature.

(*Id.* at SP–38 Form, lines 10–18 (emphasis added)). The policy also contained the following "no action" clause:

> No action shall lie against this Company for the recovery of any loss sustained by the assured unless such action is brought within one year after the entry of any final judgment or decree in any litigation against the assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim.

(*Id.* at lines 92–95). Finally, the policy prohibited the assignment or transfer of claims under the policy and stated that "no person shall acquire any right against this Company by virtue of this insurance without the express consent of this Company." (*Id.* at lines 96–98).

## ANALYSIS

### I. The Applicable Law

There is no question, and the parties do not dispute, that the Home insurance policy at issue here is a marine insurance policy subject to the court's admiralty jurisdiction. *See* U.S. Const. art. III, § 2; 28 U.S.C. § 1333; *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Acadia Ins. Co. v. McNeil,* 116 F.3d 599, 601 (1st Cir.1997) ("Marine insurance is defined as insurance with a subject matter specifically related to hazards encountered in maritime transportation"). The Court's December 4, 1998 memorandum opinion found that the issue of whether Recchi may maintain a direct action against Home to recover on any judgment it might obtain against CMI was a question of state law. *See* Mem. Op., p. 11. Therefore, the first step in ascertaining whether Recchi may recover directly from Home is to deter-

mine which state's law applies on this issue.

Since the Court is exercising its admiralty jurisdiction, federal choice of law rules apply. *See American Home Assurance Co. v. L & L Marine Serv., Inc.*, 153 F.3d 616, 618 (8th Cir.1998); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir.1998). "Under federal choice of law rules, courts determine which state's law applies to maritime contracts by 'ascertaining and valuing points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved.'" *American Home*, 153 F.3d at 618 (quoting *Advani Enters.*, 140 F.3d at 162). The "most significant relationship" test established in the Restatement (Second) of Conflict of Laws § 188 provides the appropriate framework for considering the relevant contacts. *See American Home*, 153 F.3d at 619; *Aqua–Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 674 (9th Cir.1997); *see also Advani Enters.*, 140 F.3d at 162 (looking to the Restatement factors, though not explicitly adopting the Restatement).

Under the Restatement approach, the Court must first consider whether the contract contains an effective choice of law provision. *See* Restatement (Second) of Conflict of Laws § 188(2). CMI makes reference to a choice of law provision contained in the cargo policy issued by Home and covering the cargo while it was being loaded and off-loaded. CMI Oct. 1 Mem., p. 13 & Ex. 10. But, since the accident in this case did not occur during the loading or off-loading period, the cargo policy's choice of law provision is inapplicable. CMI likewise references the choice of law

provision contained in the Towage Agreement. Contrary to CMI's assertions, however, the relevant contract is not the Towage Agreement. Rather, it is the "pay first" provision of the P & I policy, and the validity of that provision, that determine Home's liability for any judgment obtained by Recchi against CMI. Therefore, only choice of law provisions contained in the P & I policy would be relevant. Since the P & I policy does not contain a choice of law provision, the Court must consider the contacts set forth in the Restatement (Second) of Conflict of Laws § 188(2). *See* Restatement (Second) of Conflict of Laws § 188(2).[2]

The Restatement requires a court to consider: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See id.* The court must evaluate these contacts according to their relative importance with respect to the particular issue. *See id.*

Applying these factors according to their relative importance, Virginia has the most significant relationship to this issue. Negotiations for the P & I policy occurred via telephone and fax between Virginia and Georgia. Similarly, while the policy was issued in Georgia, it was delivered to CMI in Virginia and likely countersigned in Virginia.[3] The goods to be towed originated in Virginia. The location of the subject matter and place of performance included Virginia, Maryland, and Delaware. Thus, while Virginia, Georgia, Maryland, and De-

**2.** Furthermore, even assuming the Towage Agreement was relevant, the choice of law provision in that agreement would not apply to the determination of Home's liability. The choice of law provision contained in the Towage Agreement provides for federal maritime law "where applicable." Since there is no generally applicable federal maritime law on this issue, as explained in this Court's December 4, 1998 memorandum, the choice of law

provision does not govern the resolution of Home's liability.

**3.** Though Ware cannot find a countersigned copy of that policy, its general practice was to countersign a policy before giving it to the insured and the P & I policy itself states that it is invalid unless countersigned.

laware all have some connection to this issue, Virginia has the strongest contacts.

The Court agrees with CMI that the final Restatement consideration, the parties' incorporation and place of business, does not provide strong support for applying Virginia law. While CMI was a Virginia corporation, Virginia's statutory provisions precluding an insurer from using the bankruptcy of its insured as a defense to liability are designed to protect third parties, not the insured. Here, the benefitting party is Recchi, a Florida corporation. Since a Virginia party is not seeking the benefit of Virginia's law, the final Restatement factor does not support the application of Virginia law. *See American Home,* 153 F.3d at 619–20 (Missouri's interest limited since there was no Missouri resident seeking the protection of Missouri law).

While the final Restatement consideration does not support the application of Virginia law, it likewise provides insufficient support for the application of any other state's law. Recchi is a Florida corporation but no party has suggested that Florida law should apply. CMI asserts that New York law should apply since New York has an interest in protecting its New York insurance companies. While New York's policy of allowing "pay first" provisions is implicated in this case, that factor is insufficient to justify the application of New York law. Other than the fact that Home's incorporation and principal place of business are New York, that state has no connection to this case or the issue to be decided. Comparing New York's interest in protecting its insurance companies to the numerous contacts Virginia has to the issues in this case, Virginia has the greater interest. Accordingly, since Virginia has the most significant relationship to the issue to be decided, the Court will apply Virginia law.

II. The "Pay First" Provision's Validity Under Virginia Law

Section 38.2–2200 of the Virginia Code provides:

No policy or contract insuring or indemnifying against liability for injury to or the death of any person, or for injury to or destruction of property, shall be issued or delivered in this Commonwealth unless it contains in substance the following provisions or other provisions that are at least equally favorable to the insured and to judgment creditors:

1.   That the insolvency or bankruptcy of the insured, or the insolvency of the insured's estate, shall not relieve the insurer of any of its obligations under the policy or contract.

2.   That if execution on a judgment against the insured or his personal representative is returned unsatisfied in an action brought to recover damages for injury sustained or for loss or damage incurred during the life of the policy or contract, then an action may be maintained against the insurer under the terms of the policy or contract for the amount of the judgment not exceeding the amount of the applicable limit of coverage under the policy or contract.

Va.Code Ann. § 38.2–2200 (Michie 1999).

■   The P & I policy was delivered in Virginia, and Section 38.2–2200 is therefore applicable. Though the policy did not contain a provision like that found in Section 38.2–2200, such a provision becomes incorporated into the policy by statute. *See Storm v. Nationwide Mut. Ins. Co.,* 199 Va. 130, 131 n. 1, 97 S.E.2d 759 (Va. 1957) (interpreting previous version of Section 38.2–2200). Incorporating Section 38.2–2200 into the P & I policy, Home can be held liable under the policy even if Recchi cannot collect from CMI. *See Morrel v. Nationwide Mut. Fire Ins. Co.,* 188 F.3d 218, 221–22 (4th Cir.1999).

CMI contends that Section 38.2–2200 does not extend to ocean marine insurance. The plain language of that Section, however, extends to all policies "insuring or indemnifying against liability ... for injury to or destruction of property...." Va.

**384**

Code Ann. § 38.2–2200; *see also Vermont Mut. Ins. Co. v. Everette,* 875 F.Supp. 1181, 1185 (E.D.Va.1995) (Section 38.2–2200 "applies to any policy insuring or indemnifying against liability for personal injuries, death, or property damage."). Further, Section 38.2–118 states that, for purposes of Title 38.2, "'[p]roperty damage liability insurance' means insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the loss or destruction of, or damage to, the property of any other person...." Va.Code Ann. § 38.2–118 (emphasis in original omitted). Section 38.2–118 specifically excludes from its definition both personal injury liability insurance and workers' compensation and employers' liability insurance. *See id.* Section 38.2–118, however, makes no mention of excluding ocean marine insurance. The logical conclusion, therefore, is that by referring to insurance for destruction of property in Section 38.2–2200, the legislature meant to include ocean marine insurance.

Though primarily dealing with automobile insurance, Section 38.2–2200 has been applied to a wide variety of policies and injuries. *See Northland Ins. Co. v. Virginia Property & Cas. Ins. Guar. Ass'n,* 240 Va. 115, 117, 392 S.E.2d 682 (Va.1990) (automobile insurance); *Morrel,* 188 F.3d at 220–22 (liability for damage to house under contractor's insurance policy); *Everette,* 875 F.Supp. at 1183–86 (claims arising from sexual molestation under homeowners' insurance). The Court finds no reason to exclude ocean marine insurance from this scope. Since Section 38.2–2200 applies to the P & I policy and does not shield Home from liability as a result of CMI's bankruptcy, the Court will deny the Defendants' motion to determine availability of insurance Proceeds and grant Recchi's memorandum in support of availability of insurance proceeds.