

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2004

# Flexi-Van Leasing v. Through Transport

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3383

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Flexi-Van Leasing v. Through Transport" (2004). *2004 Decisions.* Paper 463.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/463

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3383

_____

FLEXI-VAN LEASING, INC.,
*Appellant*

v.

THROUGH TRANSPORT MUTUAL INSURANCE ASSOCIATION, LTD. and
THOMAS MILLER (AMERICAS) INC.

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-03278)
District Judge: Honorable Anne E. Thompson

_____

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2004

Before: SLOVITER and FUENTES, *Circuit Judges*, and POLLAK, *District Judge**

(Filed: July 23, 2004)

_____

**OPINION OF THE COURT**
_____

POLLAK, *District Judge*.

_____

* The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Flexi-Van Leasing, Inc. ("Flexi-Van"), a lessor of chassis and related shipping equipment, appeals from the District Court's order dismissing Flexi-Van's lawsuit against Through Transport Mutual Insurance Association, Ltd. ("the Association") and Thomas Miller (Americas) Inc. ("Thomas Miller") and compelling the parties to submit their insurance coverage dispute to arbitration. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I.**

Because the parties are familiar with the facts, we recite only those necessary to aid in understanding our decision. Flexi-Van, a Delaware corporation with its principal place of business in New Jersey, leases intermodal chassis and generator sets to container shipping lines. Intermodal chassis are specialized trailers used to transport cargo containers over American roadways; generator sets attach to the underside of intermodal chassis and provide power to refrigerated containers being transported by road. From 1995 to 1997, Flexi-Van executed eleven leases for chassis and generator sets to Cho Yang Shipping Co., Ltd. ("Cho Yang"), a Korean corporation with its United States headquarters in New Jersey and, at the time, one of the world's largest container shipping lines. Each lease contained a provision requiring Cho Yang to obtain and maintain "'All Risk' Physical Damage insurance" equal to the replacement value of the equipment leased.

In accordance with its obligations under the leases, Cho Yang obtained an

2

insurance policy from the Association, a Bermudan mutual indemnity insurance association managed in London. The policy provided coverage for the total loss, including constructive loss, of the equipment. A clause in the policy provides that "[i]f any difference or dispute shall arise between you (or any other person) and the Association arising out of or in connection with any insurance provided by the Association . . . , it shall be referred to arbitration in London." Joint Appendix ("J.A.") at 158 (Policy § G4, ¶ 2.1). The policy also directs that the arbitration proceedings shall be subject to English law, and that no other legal proceedings upon such a dispute may be maintained until the dispute has been referred to arbitration and the award has become final. *See* J.A. at 158 (Policy § G4, ¶¶ 2.2, 2.3). "You" is defined by the policy as "[a]n Assured and any Co Assured and Joint Assured under the Assured's insurance." J.A. at 163 (Policy § G5). The policy designates Cho Yang as a "Co-Assured" and its subsidiary, Cho Yang America, Inc., as an "Assured." Flexi-Van is not named in the policy as an insured party of any type.

Cho Yang began to experience financial difficulties in late 2000, and failed to make the timely payment of rental fees and maintenance and repair charges to Flexi-Van under the leases. By letter dated April 16, 2001, Flexi-Van notified Cho Yang that it was in default of the leases and demanded the immediate return of the equipment. Flexi-Van then conducted recovery operations at terminals, truck depots, storage facilities, and rail yards across the United States, but was unable to recover all of its equipment.

3

Flexi-Van filed a breach of contract action against Cho Yang in the United States District Court for the District of New Jersey on May 4, 2001, seeking the return of the equipment and damages. In July 2001, Cho Yang filed for liquidation in the Republic of Korea, but never filed for bankruptcy in the United States. Flexi-Van ultimately obtained a default judgment against Cho Yang on January 4, 2002, in the amount of $12,287,970.32. According to Flexi-Van, approximately $1 million of the default judgment represented the value of equipment that had been lost, stolen, or damaged beyond repair while on lease to Cho Yang. Flexi-Van soon learned that Cho Yang's liabilities vastly exceeded its assets, and that Flexi-Van would not receive any further payments from Cho Yang to satisfy the default judgment.

Meanwhile, on August 29, 2001, Flexi-Van had submitted a claim to the Association under the policy for the value of the lost chassis and generator sets. In a letter dated October 2, 2001, Thomas Miller, the Association's general correspondent for its members in the Americas, formally denied the claim on behalf of the Association. The letter asserted that Flexi-Van had no right to assert a direct claim, because it was "not an insured or loss payee" under the policy. J.A. at 184.

On May 13, 2002, Flexi-Van filed suit against the Association and Thomas Miller (collectively, "appellees") in the Union County, New Jersey, Superior Court. The appellees removed the action to the United States District Court for the District of New Jersey under 9 U.S.C. § 205, a provision of the Federal Arbitration Act implementing the

4

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 3 U.S.T. 2517 ("Convention"), *reprinted as note following* 9 U.S.C. § 201.[1]  In federal court, the appellees moved to compel arbitration and dismiss, arguing that the policy required Flexi-Van to arbitrate its claim in London.  Flexi-Van then amended its complaint to allege that its claim was governed by New Jersey's direct action statute, N.J.S.A. § 17:28-2.

The District Court initially denied, without an opinion, the appellees' motion to compel arbitration and dismiss.  Upon the appellees' motion for reconsideration, the District Court reversed itself and granted the motion on July 31, 2003, ordering the parties to submit to arbitration and dismissing the action with prejudice.  Ruling from the bench, the District Court found that (1) New Jersey's direct action statute did not supersede the policy's arbitration clause; (2) Flexi-Van was a third-party beneficiary of the policy and thus bound by its arbitration clause; and (3) the Association was not an "unauthorized insurer" subject to restrictions under New Jersey law on its ability to litigate this matter.

---

[1] The removal statute provides, in relevant part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205.

5

Flexi-Van appealed.

## II.

We exercise plenary review over the District Court's legal conclusions, including its determination that the underlying dispute is arbitrable. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1509 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995). To the extent that the District Court's conclusions turn on findings of fact, we review those findings of fact for clear error. *Id.* at 1509.

An arbitration provision in an international commercial agreement such as the policy in this case is governed by the Convention. *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 448-49 (3d Cir. 2003). Pursuant to the Convention, to which the United States and the United Kingdom are signatories, a district court must order arbitration when confronted with a dispute that is covered by the arbitration provision. *Id.* at 449; Convention art. II, ¶ 3.[2] Before it compels an unwilling party to arbitrate, however, the court must engage in a limited review, to ensure that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement. 9 U.S.C. § 4; *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). In conducting this review, the court operates under a

---

[2] "The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that said agreement is null and void, inoperative or incapable of being performed." Convention art. II, ¶ 3.

6

federal policy that favors arbitration, especially with respect to international commercial agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

## A.

Flexi-Van first contends that its dispute with the appellees is not arbitrable because it arises under New Jersey's direct action statute, N.J.S.A. § 17:28-2. The direct action statute provides that when an injured party who has obtained a judgment against an insured cannot execute the judgment due to the insured's insolvency or bankruptcy, the injured party can proceed directly against the insurance carrier for the amount of the judgment not exceeding the amount of the policy. N.J.S.A. § 17:28-2. Flexi-Van argues that the statute supersedes the arbitration clause in the policy between the Association and Cho Yang, and that the District Court thus erred in enforcing the arbitration clause and dismissing the lawsuit.

However, as the District Court found, the underlying dispute between Flexi-Van and the Association does not fall within the scope of section 17:28-2. The statute does not apply to all policies or cover all types of losses. The first sentence of section 17:28-2 restricts its scope to a

> policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable.

7

*Id.*

Flexi-Van argues that its loss is of the type covered by the second clause of N.J.S.A. § 17:28-2: "loss or damage to property caused by . . . any vehicle drawn, propelled or operated by any motive power." The essence of Flexi-Van's argument is that the loss to its equipment occurred while the equipment was attached to Cho Yang's tractors as part of Cho Yang's over-the-road transportation operations. The tractors are vehicles "drawn, propelled or operated by any motive power." Therefore, Flexi-Van contends, its loss was *caused by* a vehicle drawn, propelled or operated by any motive power. The District Court found section 17:28-2 to be inapplicable, stating in its oral decision that "[i]t seems to me pretty clear that the Direct Action Statute of New Jersey seeks to protect people for motor vehicle – automobile incidents, which we have so many of, and where a victim would be unprotected. . . . But that's not what we have, here." J.A. at 29.

In interpreting a statute, New Jersey courts begin with an examination of the statute's plain language. *Newell v. Ruiz*, 286 F.3d 166 (3d Cir. 2002) (citing *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 498 (N.J. 2001)). We agree with the District Court that the loss suffered by Flexi-Van is not within the contemplation of the statute's language. The injury suffered by Flexi-Van was its inability to collect rental fees, maintenance and repair charges, recovery expenses, and unreturned equipment – an injury brought about by Cho Yang's insolvency. To suggest that its loss was "caused by" motor

8

vehicles merely because the equipment it was unable to recover was attached to motor

vehicles stretches the language of the direct action statute beyond reasonable bounds.

None of the cases cited by Flexi-Van persuades us that the statute was intended to be

utilized for the purpose sought here:  to enforce a default judgment in an action for breach

of contract.[3]  Therefore, we affirm the District Court's conclusion that N.J.S.A. § 17:28-2

is inapplicable, and hence is not a bar to referring the underlying dispute to arbitration.

## B.

Second, Flexi-Van argues that the District Court erred by compelling Flexi-Van to

---

[3] Of the four cases cited by Flexi-Van in aid of its argument for an expansive reading of N.J.S.A. § 17:28-2, only two offer support for the proposition that New Jersey's direct action statute might be applied outside the context of automobile accidents, and the support the two cases offer is underwhelming.  In *In re Hub Recycling, Inc.*, 106 B.R. 372 (D.N.J. 1989), the court determined that New Jersey law authorized a third party to bring an action in trespass directly against an insurer for damage to the third party's land allegedly caused by the insured's illegal dumping.  However, the three New Jersey state cases invoking the "caused by . . . any vehicle" provision of section 17:28-2 relied on by the *Hub Recycling* court all involved automobile accidents.  *See In re Estate of Gardinier*, 191 A.2d 294 (N.J. 1963); *Miney v. Baum*, 406 A.2d 234 (N.J. Super. Ct. 1979); *Eschle v. Eastern Freight Ways*, 319 A.2d 786 (N.J. Super. Ct. 1974).

In dicta in *Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247 (D.N.J. 1995), the court suggested that if an assignee obtained a judgment against an insured that could not be executed due to the insured's bankruptcy, "section 17:28-2 could authorize a direct action by the [assignee] against the Defendant insurers." *Id.* at 1253.  But section 17:28-2 was not actually at issue in *Caldwell Trucking*; the PRP Group sought to bring a direct action not under 17:28-2 but under a provision of the New Jersey Spill Act, N.J.S.A. § 58:10-23.11s.

The final two cases cited by Flexi-Van do not invoke N.J.S.A. § 17:28-2 at all. *See Muntz v. Smaily*, 286 A.2d 515 (N.J. Super. Ct. App. Div. 1972) (applying state procedural rule for service of process); *United States v. Tug Marine Venture*, 101 F. Supp. 2d 378 (D. Md. 2000) (analyzing Virginia's direct action statute, Va. Code Ann. § 38.2-2200).

submit to arbitration without first making a finding that Flexi-Van was bound by the policy's arbitration clause. Generally speaking, a party cannot be required to participate in arbitration, rather than adjudication, of a dispute unless it has agreed to submit that dispute, or disputes of like nature, to the arbitral process. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Flexi-Van was not a signatory to the insurance policy, nor was it listed in the policy as an "Assured," a "Joint Assured," or a "Co-Assured." However, we have recognized that non-signatories to an arbitration agreement may be bound by that agreement through the application of "traditional principles of contract and agency law." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001). One such traditional principle, applicable in the arbitration context, is the principle that a third-party beneficiary is bound by the terms of a contract where its claim arises out of that contract. *Id.* at 195; *see also Jansen v. Salomon Smith Barney, Inc.*, 776 A.2d 816, 820 (N.J. Super. Ct. App. Div. 2001) ("[N]onsignatories of a contract . . . may . . . be subject to arbitration if the nonparty is an agent of a party or a third party beneficiary to the contract") (internal quotations omitted).

In *Sandvik AB v. Advent International Corp.*, 220 F.3d 99 (3d Cir. 2000), this court held that a party could not be required to submit to arbitration before the district court determined that the party was bound to a valid arbitration agreement. *Id.* at 107. Flexi-Van argues that, under *Sandvik*, the District Court should not have ordered Flexi-Van to

10

submit to arbitration, because it never determined that Flexi-Van was a loss payee, joint insured, co-insured, or third-party beneficiary under the policy. The record suggests otherwise. Ruling from the bench, the District Court stated that Flexi-Van "stands in the shoes of Cho Yang, or [is] a third-party beneficiary of the insurance policy taken by Cho Yang. That insurance [policy] calls for arbitration in the United Kingdom." J.A. at 29. The District Court thus made the requisite finding that Flexi-Van, as either a subrogee of Cho Yang or a third-party beneficiary of the policy, was bound by the policy's arbitration clause.[4]

## C.

As a general matter, New Jersey insurance law requires an out-of-state corporation seeking to issue insurance policies to New Jersey residents to be either admitted by the Commissioner of Banking and Insurance, N.J.S.A. § 17:32-18, or given limited approval by the Commissioner as "surplus lines insurers" providing coverage that is not otherwise available from authorized insurers. N.J.S.A. § 17:22-6.42. Out-of-state insurers that are neither admitted, nor approved as surplus lines insurers, face restrictions on their ability to litigate claims in New Jersey, two of which have been raised by Flexi-Van. N.J.S.A. § 17:22-6.39 provides that an unauthorized insurer cannot "institute, file, or maintain . . . any suit, action or proceeding in this State to enforce any right, claim or

---

[4] We need not review the District Court's determination that Flexi-Van "stands in the shoes of Cho Yang, or [is] a third-party beneficiary of the insurance policy taken by Cho Yang," as Flexi-Van has not challenged the soundness of that determination.

11

demand arising out of any insurance transaction in this State . . . ." And N.J.S.A. § 17:51-2(a) requires an unauthorized insurer to post security or otherwise demonstrate to the court that it has sufficient assets to satisfy any final judgment that may be entered against it.[5]

It is undisputed that the Association has not been admitted by the Commissioner of Banking and Insurance, nor has it been approved by the Commissioner as a surplus lines insurer. Flexi-Van argues that the District Court erred by (1) allowing the Association to file a notice of removal and a motion to compel arbitration and dismiss, thereby, so Flexi-Van contends, allowing an unauthorized insurer to "institute, file, or maintain" an action, contrary to section 17:22-6.39; and (2) failing to require the Association to post security sufficient to satisfy a final judgment, in violation of section 17:51-2(a).

However, the general requirement that an out-of-state insurer be authorized by the Commissioner of Banking and Insurance to sell insurance in New Jersey does not apply to

---

[5] N.J.S.A. § 17:51-2(a) requires an unauthorized insurer to

> deposit with the clerk of the court in which such action or proceeding is pending cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action; provided, however, that the court may in its discretion and after reasonable notice to the opposing party and upon a hearing make an order dispensing with such deposit or bond where the insurer shows to the satisfaction of the court that it maintains, in a State of the United States, funds or securities, in trust or otherwise, sufficient and available to satisfy any final judgment which may be entered in such action or proceeding . . . .

12

providers of ocean marine insurance. N.J.S.A. § 17:32-21(g) exempts from the

authorization requirement "[i]nsurance of vessels, crafts or hulls, cargoes, marine

builders' risks, marine protection and indemnity or other risks including strikes and war

risks commonly insured under ocean or wet marine forms of policy."[6] The appellees cite

a December 22, 1992, letter to the Association from the New Jersey Department of

Insurance ("Department") as evidence that the Association qualifies as an ocean marine

insurer. The letter was written in response to the Association's surplus lines application

regarding its coverage of risks associated with world-wide ocean carriage and vessel

operation, including risks related to containers and chassis leased and owned by ship

operators. After reviewing the Association's submission, the Department determined that

these risks were marine in nature, and therefore that the Association did not require

admitted status or approval as a surplus lines carrier in order to provide such insurance in

---

[6] The parties cite repeatedly to N.J.S.A. § 17:22-6.37(f) as the source of the Association's claimed exemption from the restrictions on unauthorized insurers. Section 17:22-6.37(f) does provide an exemption for "[i]nsurances of vessels, crafts or hulls, cargoes, marine builders' risks, marine protection and indemnity or other risks including strikes and war risks commonly insured under ocean or wet marine forms of policy," but it is an exemption from a prohibition not at issue in the present case: the prohibition against acting on behalf of an unauthorized insurer. *See* N.J.S.A. § 17:22-6.37 ("No person shall in this State directly or indirectly act as agent for, or otherwise represent or aid on behalf of another, any insurer not then authorized to transact such insurance in this State . . . in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this State."). While the exemption found in section 17:22-6.37(f) reinforces our conviction that ocean marine insurers are not subject to New Jersey's restrictions on unauthorized insurers, it is not directly relevant to the present appeal.

New Jersey.

Flexi-Van attempts to undermine the importance of the Department's letter, primarily by listing the various types of insurance beyond ocean marine coverage offered by the Association. Whether the Association is acting outside the scope of the ocean marine exemption with respect to coverage it provides to other parties is irrelevant, however, to the matter at hand. The coverage provided to Cho Yang is the same as, or substantially similar to, the coverage characterized as "ocean marine" by the Department in 1992. Where, as here, a federal court is asked to interpret state law, the federal court must give the decision of a state agency charged with administering that law the same deference accorded it by the New Jersey courts. *See Kiwanis Int'l v. Ridgewood Kiwanis Club*, 811 F.2d 247, 249 (3d Cir. 1987). The New Jersey courts give substantial weight to an administrative agency's interpretation of a statute it is charged with enforcing. *In the Matter of Bd. of Educ. of Town of Boonton*, 494 A.2d 279, 284 (N.J. 1985).

Relying on the Department's letter, the nature of Cho Yang's business, and Flexi-Van's own characterization of Cho Yang's business as a marine business in its complaint, the District Court determined that the coverage provided by the Association to Cho Yang was maritime in nature. We similarly defer to the Department's classification of the Association as an ocean marine insurer.

In addition to their general exemption from New Jersey's authorization requirement, out-of-state ocean marine insurers are also specifically exempted from the

14

restriction, under N.J.S.A. § 17:22-6.39, on an unauthorized insurer's ability to "institute, file, or maintain" a suit in New Jersey. *See* N.J.S.A. § 17:22-6.39.[7] Therefore, even if Flexi-Van is thought to be  correct in its view that the Association, by removing this case to federal court and then moving for dismissal, can be said to have "instituted, filed, or maintained" a suit – a reading of the statutory language which we regard with considerable dubiety – we find that section 17:22-6.39 posed no restriction on those actions.

The parties have not brought to our attention, nor have we independently found, an explicit ocean marine exemption from the security requirement of N.J.S.A. § 17:51-2(a). Nevertheless, given the general ocean marine exemption appearing in N.J.S.A. § 17:32-21(g), we are of the view that the security requirement of section 17:51-2(a) was not intended to apply to ocean marine insurers.[8]  Accordingly, we uphold the District Court's

---

[7] N.J.S.A. § 17:22-6.39 provides that

> [n]o unauthorized insurer shall institute, file, or maintain . . . any suit, action or proceeding in this State to enforce any right, claim or demand arising out of any insurance transaction in this State *except with respect to the following:*  . . . (2) . . . insurances of vessels, crafts or hulls, cargoes, marine builders' risks, marine protection and indemnity or other risks including strikes and war risks commonly insured under ocean or wet marine forms of policy . . .

(emphasis added).

[8] Even if, in an appropriate case, an unauthorized ocean marine insurer would be held to be bound by the security requirement, it is our view that, given the present posture of this litigation, for this court to direct the District Court, pursuant to N.J.S.A. § 17:51-2(a), either to demand that the Association post security, or to demonstrate that such a

determination that N.J.S.A. §§ 17:22-6.39 and 17:51-2(a) are inapplicable to the Association.

## III.

For the foregoing reasons, we will affirm the District Court's order granting the appellees' motion to compel arbitration and motion to dismiss.

---

step would be unnecessary, would be an essentially pointless exercise. Indeed, Flexi-Van has not suggested in its briefs why such an exercise would be of any consequence