NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4621-19

CRYSTAL POINT
CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff-Appellant,

v.

KINSALE INSURANCE
COMPANY,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 4, 2021**
>
> **APPELLATE DIVISION**

Argued January 11, 2021 – Decided March 4, 2021

Before Judges Messano, Suter, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1579-20.

J. Randy Sawyer argued the cause for appellant (Stark & Stark, PC, attorneys; J. Randy Sawyer and John S. Prisco, of counsel and on the briefs).

Sean P. Mahoney argued the cause for respondent (White and Williams, LLP, attorneys; Sean P. Mahoney and Felix S. Yelin, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiff Crystal Point Condominium Association appeals the June 23, 2020 order that dismissed its declaratory judgment complaint against defendant Kinsale Insurance Company with prejudice and required it to arbitrate its claims against defendant. For reasons that follow, we reverse the June 23, 2020 order, reinstate plaintiff's declaratory judgment complaint and remand for further proceedings consistent with this decision.

I.

Plaintiff is a nonprofit corporation that is responsible for "administering, managing, operating and maintaining the common elements" of a forty-two-story high-rise condominium building located in Jersey City. An inspection of the condominium's common elements by an engineering firm retained by plaintiff revealed there were construction defects or deficiencies with "the concrete balconies and slabs of the building."

In 2015, plaintiff sued several contractors involved in construction of the building seeking damages for these alleged construction defects. Nacamuli Associates, LLC (Nacamuli), the structural engineer for the condominium construction project, and Hawke Inspection and Testing (Hawke), a third-party inspector of the concrete balconies and slabs, were added as parties in 2017 and 2018, respectively. Neither Nacamuli nor Hawke filed an answer to the

construction litigation complaint. A default was entered against Nacamuli in January 2018 and against Hawke in July 2018. Following a hearing, judgments were entered in favor of plaintiff against Hawke for $859,965.01 and against Nacamuli for $874,400.86. Plaintiff attempted to execute on the judgments. Only Hawke had a federal tax lien number. A bank account search using that number showed Hawke was out of business. Relevant here, plaintiff issued writs of execution against Nacamuli and Hawke to be served by the Hudson County Sheriff. The writs were not returned by the time this appeal was briefed.

Defendant is an excess and surplus lines insurer that is eligible to issue insurance policies in New Jersey.[1] Plaintiff alleges that defendant issued an architects and engineers professional liability policy to Nacamuli and Hawke for the periods from July 29, 2016 to July 29, 2017, and from July 29, 2017 to July 29, 2018.

Under the policy, the bankruptcy or insolvency of an insured does not relieve defendant from its obligations. The policy also provides that "[n]o action may be brought against us unless there has been full compliance with all

[1] A surplus lines carrier is "an unauthorized insurer in which an insurance coverage is placed or may be placed under [the] surplus lines law." Johnson & Johnson v. Dir., Div. of Taxation, 461 N.J. Super. 148, 153-54 (App. Div. 2019) (alteration in original) (quoting N.J.S.A. 17:22-6.41(b)).

A-4621-19

of the terms of this [p]olicy and the ultimate amount of the 'insured's' responsibility has been finally concluded either by a trial judgment against the 'insureds' or by written agreement with the 'insureds', all claimants, and us . . . ." The policy provides for binding arbitration.

SECTION X — BINDING ARBITRATION

All disputes over coverage or any rights afforded under this [p]olicy, including whether an entity or person is a "named insured", an "insured", an additional insured or, the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding [a]rbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

. . . .

The decision of the arbitration is final and binding on the parties.

Defendant declined to defend or indemnify Nacamuli and Hawke in the construction litigation, and issued a coverage declination letter. Defendant disputes that Nacamuli is its insured.

On April 23, 2020, plaintiff filed a declaratory judgment complaint against defendant. Plaintiff requested a declaration that defendant was obligated to pay the judgments against Nacamuli and Hawke. The complaint also alleged defendant breached its contract with Nacamuli and Hawke by

denying them a defense and indemnification under the policy. The complaint did not reference N.J.S.A. 17:28-2 (the direct action statute), nor whether Nacamuli and Hawke were bankrupt or insolvent.

On May 29, 2020, defendant filed a motion to compel arbitration under the policy and to stay proceedings in court.[2] It argued that any coverage dispute about the policy had to be resolved through binding arbitration. Defendant argued plaintiff was equitably estopped from enforcing the insurance contract at the same time it was trying to avoid the arbitration requirement.

Plaintiff opposed the motion arguing it was an incidental beneficiary of the policy. Plaintiff claimed for the first time that the direct action statute applied to its declaratory judgment action, invalidating any requirement to participate in binding arbitration. In response, defendant argued the direct action statute did not apply and the prerequisites for its application were not met, but if they were, arbitration was required because the statute used the phrase "under the terms of the policy."

The motion judge granted defendant's motion to compel binding arbitration on June 23, 2020, and dismissed plaintiff's complaint. The stay

---

[2] This motion is not included in the appendix.

 A-4621-19

request was denied. In its written decision, the court found plaintiff was an "incidental third-party beneficiary" of the insurance policy and not a "third-party beneficiary." As a judgment creditor, it "stand[s] in the shoes of the insureds to collect the benefits of the contract" and must "accept the terms of the contract it finds distasteful." The motion judge found the direct action statute did not apply because there was no indication Nacamuli and Hawke could not pay the judgment due to insolvency or bankruptcy. Plaintiff, it was said, "must take the sweet with the sour."

Plaintiff's motion for reconsideration was denied as "unwarranted." The statute did not apply because plaintiff never showed Nacamuli and Hawke were insolvent. The court found enforcement of "the policies' arbitration clause [was] not inconsistent with the [d]irect [a]ction [s]tatute" because New Jersey's law favors arbitration and arbitration can be enforced against a non-party to a contract. The court granted plaintiff's motion to stay the June 23, 2020 order pending appeal.

On appeal, plaintiff raises the following issues for our consideration:

POINT I

THE TRIAL COURT ERRED IN COMPELLING ARBITRATION AND DISMISSING THE ASSOCIATION'S DECLARATORY JUDGMENT

6

ACTION IN CONTRAVENTION OF NEW JERSEY'S DIRECT ACTION STATUTE.

A.  Standard of Review.

B.  The Trial Court Improperly Concluded That The New Jersey Direct Action Statute, N.J.S.A. § 17:28-2, (the "Direct Action Statute") Did Not Apply To The Association's Claims.

C.  The Trial Court Erred In Holding that the Policy Arbitration Clause Superseded the Direct Action Statute.

## II.

"As a general rule, an individual or entity that is 'a stranger to an insurance policy has no right to recover the policy proceeds.'" Ross v. Lowitz, 222 N.J. 494, 512 (2015) (quoting Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co., 320 N.J. Super. 546, 553-54 (App. Div. 1999)).  There is no such direct right unless a contractual or statutory section allows for a direct action against the insurer.  See 12 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 150.08[2][a] (2020).

In New Jersey, a direct action against an insurer is permitted under N.J.S.A. 17:28-2.  The statute provides,

> [n]o policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property

caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered in this state by any insurer authorized to do business in this state, unless there is contained within the policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person . . . because of the insolvency or bankruptcy, then an action may be maintained by the injured person . . . against the corporation under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy.

[N.J.S.A. 17:28-2.]

Plaintiff contends the trial court erred by dismissing its complaint because the direct action statute permits it to sue defendant directly under the policy issued to Nacamuli and Hawke. Our review of a trial court's legal determination is plenary. D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The trial court found the direct action statute did not apply because there was no evidence Nacamuli or Hawke were bankrupt or insolvent. After the appeal was filed, however, the writs of execution to Nacamuli and Hawke were returned unsatisfied. They noted that service was unsuccessful because the

A-4621-19

"[c]ompany does not exist at this address." We granted plaintiff's motion to supplement the record to include these writs. The return of an "unsatisfied execution is prima facie evidence" of the insolvency of the insured. Universal Indem. Ins. Co. v. Caltagirone, 119 N.J. Eq. 491, 494 (E. & A. 1936). Defendant has not offered any evidence to contradict this. As such, plaintiff's judgments are unsatisfied.

Cases are clear that an injured party cannot proceed through the direct action statute without proof of an unsatisfied execution or judgment. See Dransfield v. Citizens Cas. Co., 5 N.J. 190, 194 (1950) (a right of action ripens when there is recovery of a judgment against the insured "whose insolvency is proved by the return of an execution unsatisfied"); Kabinski v. Emp'rs' Liab. Assur. Corp., 123 N.J.L. 377, 379 (E. & A. 1939) ("injured parties have no rights under the policy until there is an unsatisfied judgment against the [insured]"); Saxon v. United States Fid. & Guar. Co., 107 N.J.L. 266, 268 (E. & A. 1931) (explaining that plaintiffs cannot recover from insurer unless "an execution was returned unsatisfied because of the insolvency or bankruptcy of the [insured]"). This prerequisite having been satisfied, and further considering the unrebutted evidence plaintiff offered in opposing defendant's

9

motion demonstrating its efforts to collect on the judgment, we find the direct action statute does apply in this case.

We disagree with defendant's argument, that the direct action statute is limited to injuries arising out of accidents for property loss or damage from animals. The statutory language does not support this cramped application. Merely because the statute provides that certain types of policy forms must include a right for a post-judgment action does not mean there is no such right with respect to other types of policies. The legislature did not indicate that other types of post-judgment actions were prohibited by the direct action statute.

The trial court's June 23, 2020 order required plaintiff to participate in binding arbitration with defendant because the trial court found plaintiff stood in the shoes of Nacamuli and Hawke as their judgment creditor and had to accept binding arbitration of its claim under the insurance contract. The trial court did not resolve whether the direct action statute itself precluded arbitration, as plaintiff now argues.

The enforceability of an arbitration provision is a question of law that we review de novo. Medford Twp. Sch. Dist. v. Schneider Elec. Bldgs. Americas, Inc., 459 N.J. Super. 1, 7 (App. Div. 2019); see Kernahan v. Home

Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019) ("Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive.").

Arbitration is a "favored means of dispute resolution." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). To determine enforceability, courts "apply ordinary state-law principles that govern the formation of contracts." Kernahan, 236 N.J. at 318 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "An arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Id. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). The "initial inquiry" is whether the contract is based on "mutual assent." Id. at 319 (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014)).

The parties here do not dispute that there was no mutuality of assent between plaintiff and defendant. The trial court ordered plaintiff to submit to binding arbitration of its claim against defendant even though plaintiff was not a signatory of the insurance contract.

11

"Nonsignatories of a contract . . . may compel arbitration or be subject to arbitration if the nonparty is . . . a third[-]party beneficiary to the contract." Mut. Benefit Life Ins. Co. v. Zimmerman, 783 F. Supp. 853, 865 (D.N.J. 1992). Traditionally, third-party beneficiary status "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Ross, 222 N.J. at 513 (quoting Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259 (1982)). Where "there is no intent to recognize the third party's right to contract performance, 'then the third person is only an incidental beneficiary, having no contractual standing.'" Ibid. (quoting Broadway Maint. Corp., 90 N.J. at 259). "The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Broadway Maint. Corp., 90 N.J. at 253 (citing Standard Gas Power Corp. v. New England Cas. Co., 90 N.J.L. 570, 573-74 (E. & A. 1917)). There is no indication in this record what the parties intended about the contract and who would or would not benefit from the contract. We have no information about the coverage litigation.

12

Recently in <u>Northfield Ins. Co. v. Mt. Hawley Ins. Co.</u>, 454 N.J. Super. 135, 148-49 (App. Div. 2018), we observed that to a certain extent an injured party is a third-party beneficiary of an insurance policy and has standing to sue in light of the direct action statute, which permits an injured person to maintain an action when the insured is insolvent or bankrupt. That status is "compelled by legislative mandate . . . ." <u>Id.</u> at 148 n.7. We need not measure the full extent of this statutory third-party beneficiary status here. In our view, it is enough that the legislature conferred statutory third-party beneficiary status in a situation such as this, where an injured party obtained judgment against the insured and that insured now has been shown to be insolvent.

It does not follow that merely because the statute allows a direct action against the insurer that arbitration is required under the contract. Defendant relies on <u>Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n, Ltd.</u>, 108 F. App'x 35 (3d Cir. 2004), for the opposite conclusion, but that case is not persuasive nor is it precedential. <u>Flexi-Van</u> cites the principle "that a third-party beneficiary is bound by the terms of a contract where its claim arises out of that contract," <u>Id.</u> at 40, but plaintiff would have no claim here but for the direct action statute that permits it relief against defendant. In this regard it is

13

a third-party beneficiary by virtue of the statute rather than in the traditional sense.

Plaintiff argues the direct action statute itself compels the result that it is not required to arbitrate because it uses the term "action," which it interprets to mean a lawsuit in Superior Court. N.J.S.A. 17-28:2. Defendant claims there is a statutory basis for its argument that arbitration is required because of the statute's reference to maintaining an action "under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy." Ibid. We believe the answer to whether arbitration can be compelled lies not within the direct action statute but within the principles which animate our arbitration law.

Defendant argues that because plaintiff seeks the benefit of the insurance contract, it has stepped into the shoes of the insured and thus, as the motion judge said, must "take the sweet with the sour." As much as this colloquialism may have appeal, it gives no recognition to the fact that plaintiff is the injured party with no contractual relationship with the insured or insurer and whose only means to collect its judgment against the now defunct insured is through the pathway afforded by legislative mandate. Why is it then that the injured party must accept binding arbitration when it did not assent? In this context, it

14

is much more likely the legislature's reference in the statute to the policy was meant to reference the coverage itself and not the alternate dispute resolution mechanism included in the policy by the insurer and consented to by the insured.

Defendant relies on Arthur Anderson LLP v. Carlisle, 556 U.S. 624, 631 (2009) in support of the trial court's order requiring plaintiff to arbitrate its claims against defendant. In Arthur Anderson, the Court held that non-parties are not barred from arbitration "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . . .'" Ibid.

We do not agree with defendant that this is the end of the analysis. In Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187 (2013), our Supreme Court considered whether a non-signatory to an arbitration agreement could be compelled to arbitrate. Hirsch recognized that in considering whether to require arbitration, a court must determine "whether a valid agreement to arbitrate exists." Ibid. (quoting Hojnowski, 187 N.J. at 342). "This preliminary question, commonly referred to as arbitrability, underscores the fundamental principle that a party must agree to submit to arbitration." Ibid.

(citing <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.</u>, 168 N.J. 124, 132 (2001)).  However, the Court acknowledged that a non-signatory to an arbitration agreement might be compelled to arbitrate based on principles of agency or other legal theories.  <u>Ibid.</u>  The Court explained,

> [t]he United States Supreme Court has recognized that, in the context of arbitration, "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver and <u>estoppel</u>.'"  <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 631 (2009) (emphasis added) (quoting 21 <u>Williston on Contracts</u> § 57:19, at 183 (4th ed. 2001)).  In other words, in assessing whether parties can be compelled to arbitrate, courts can use principles of contract law even in the absence of an express arbitration clause.
>
> [<u>Hirsch</u>, 215 N.J. at 188-89.]

<u>Hirsch</u> considered that a non-signatory could be compelled to arbitrate based on the doctrine of equitable estoppel, finding that there needed to be proof of detrimental reliance by one of the parties for application of estoppel. <u>Hirsch</u> rejected the notion that the non-signatory would be required to arbitrate claims simply because they were intertwined with claims made against a signatory to the agreement.  <u>Id.</u> at 189.  <u>Hirsch</u> did not involve a third-party beneficiary.

We reject the notion that labeling a non-signatory claimant as a third-party beneficiary of an insurance contract compels arbitration. Our courts have held that the decision whether to enforce arbitration turns on "consider[ation of] the contractual terms, the surrounding circumstances, and the purpose of the contract." Id. at 188 (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). Courts are to "look to the language of the arbitration clause to establish its boundaries." Ibid. (citing Garfinkel, 168 N.J at 132). The Court cautioned against expanding the scope of the arbitration contract. Ibid.

Defendant contends these claims fall under its arbitration provision, but like Hirsch, the arbitration clause is broad although it does "not embrace any express inclusion of claims involving other parties." Id. at 195. It is limited to the parties to the contract. In this context, New Jersey's preference for arbitration does not apply. Id. at 196 (providing that "preference only applies when an agreement exists between the parties to arbitrate their disputes").

We are mindful as well that this case involves a judgment creditor of Nacamuli and Hawke where defendant apparently declined to provide a defense or indemnification. Defendant could have attempted to resolve the coverage issues with its insureds rather than requiring the injured third-party

17

judgment creditor — who is not a signatory — to relinquish its right to trial to assert its claim to the insurance policy.

We are mindful as well that the party seeking to compel arbitration is a surplus lines carrier. As we recently explained, "[s]urplus lines insurance involves New Jersey risks which insurance companies authorized or admitted to do business in this State have refused to cover by reason of the nature of the risk." Johnson & Johnson, 461 N.J. Super. at 154 (quoting R.R. Roofing & Bldg. Supply Co. v. Fin. Fire & Cas. Co., 85 N.J. 384, 389 (1981)). Defendant is an eligible surplus lines insurer. N.J.S.A. 17:22-6.45 sets forth the statutory requirements to become an eligible surplus lines insurer in New Jersey. Consideration of the policy's arbitration clause is not expressly mentioned in the statute although the "condition or methods of operation of the insurer must not be such as would render its operation hazardous to the public or its policyholders in this State." N.J.S.A. 17:22-6.45(e). Considering the contract, the surrounding circumstances and the language of the arbitration clause, see Hirsch, 215 N.J. at 188, we are not satisfied that the third-party beneficiary status accorded to plaintiff by the direct action statute means binding arbitration is a predetermined sequela of that status when the claim is considered against the canvas of our arbitration jurisprudence.

18

Equitable estoppel does not afford relief to defendant. The arbitration clause in its policy does not reference third-party actions such as this, making it unlikely defendant relied to its detriment on the clause to defend third-party claims such as this.

Reversed. The complaint is reinstated, and the matter is remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4621-19